# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 08-30772-DHW
                                                         Chapter 13
WILLIAM RANDALL BURNETTE,

    Debtor.

## MEMORANDUM OPINION

The debtor, William Randall Burnette ("Burnette" or "debtor"), filed this chapter 13 case on May 2, 2008. Ms. Rosie Reynolds appeared at the first scheduled confirmation hearing and made a *pro se* oral objection to the confirmation of Burnette's plan. The confirmation hearing was continued to August 25, 2008, where Ms. Reynolds' objection was considered at an evidentiary hearing. This court has jurisdiction over this matter through 28 U.S.C. § 1334 and an order of the United States District Court for this district which refers jurisdiction in title 11 matters to the Bankruptcy Court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). For the following reasons, the objection to confirmation will be sustained.

## Facts

Burnette operated a wrecker service. Burnette was under contract with a shopping center manager, Aronov, to remove abandoned vehicles from the parking lots of shopping centers that it managed.

On or about October 13, 2007, Burnette received a request from Aronov to remove a 1995 Chevrolet Lumina from the parking lot of Service Merchandise, one of Aronov's managed properties. At the time of the call, the Lumina had been parked in the Service Merchandise lot for about one week. When Burnette arrived at the scene, he discovered that the car's engine was blown. Hence, the vehicle was inoperable and had to be towed to Burnette's lot.

The Chevrolet Lumina, which was owned by Ms. Reynolds, had been left in the shopping center parking lot by her grandson. Ms. Reynolds had loaned the car to her grandson who had been using it for the month prior to his leaving it in the parking lot.

Ms. Reynolds' grandson later returned to the Service Merchandise parking lot to find that the vehicle had been removed. The grandson, however, learned from persons at the shopping center that the vehicle had been towed by Burnette.

Ms. Reynolds' friend, Perky Yarborough, testified that she, in an effort to assist, spoke to Burnette on several occasions regarding Ms. Reynolds' vehicle. In each of these conversations, Burnette indicated that he would be sending Ms. Reynolds a certified mail notice concerning her vehicle. In January 2008, Ms. Yarborough and Ms. Reynolds actually visited Burnette's place of business. On that occasion, Burnette again told the women that he would be sending Ms. Reynolds a certified letter.

Burnette, however, testified that he obtained Ms. Reynolds' name and address as the registered owner of the Lumina through the Alabama Department of Revenue. Upon acquiring that information, Burnette claims to have sent Ms. Reynolds a certified letter notifying her that he had possession of the car. He acknowledged that he had no other proof that the certified letter had been mailed because his records, including the return receipt, had been destroyed in an office fire.

In addition to the certified letter that Burnette claims to have mailed Ms. Reynolds, he testified that he posted a notice concerning the Lumina for two weeks at the Montgomery County Courthouse. Burnette acknowledged that he did not give notice of the sale by publication. Ms. Reynolds testified that she never received a certified mail notice from Burnette.

Burnette sold the Chevrolet Lumina at auction in January 2008. The car brought $300 at sale.

Law

Ms. Reynolds appeared in this court *pro se*, and she did not file a written objection to confirmation. Nevertheless, her opposition to confirmation of Burnette's plan implicates the "good faith" requirements of 11 U.S.C. § 1325(3) and (7).

In an objection to confirmation for lack of good faith, the burden of proof is allocated between the objecting party and the debtor. The objecting party bears "the initial burden of articulating a clear and cognizable objection." *In re Fricker*, 116 B.R. 431, 438 (Bankr. E.D. Pa. 1990). The debtor, however, bears the ultimate burden of persuasion that the good faith requirements are satisfied. *Id.*; *In re*

*Crawford*, 2008 WL 2783461 (Bankr. M.D. Ala. July 16, 2008); *Lincoln v. Cherry Creek Homeowners Ass'n (In re Lincoln)*, 30 B.R. 905, 909 (Bankr. D. Col. 1983)(holding that the debtor, as the plan proponent, has the burden of establishing the confirmation criteria enumerated in § 1325(a)); *In re Lindsey*, 122 B.R. 157, 159 (Bankr. M.D. Fla. 1991).

The Court of Appeals for this circuit considered the good faith requirement of § 1325(a) in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir. 1983). The court held that good faith, which defies comprehensive definition, is determined based on the totality of the circumstances in each case: has there "been an abuse of the provisions, purpose or spirit" of the relief provided by chapter 13? *Kitchens*, 702 F.2d at 888. The court went on to enumerate a non-exhaustive list of factors which a bankruptcy court must consider in determining whether the statutory requirement of good faith is met.[1] Although two of the *Kitchens* factors are implicated here (whether this debt would be nondischargeable in a case under chapter 7 under the willful and malicious injury to property provision and what were the debtor's bona fides, or lack thereof, in dealing with this creditor) only one need be discussed.

Debts resulting from willful and malicious injury to the property of another are nondischargeable in cases under chapter 7. The Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this

---

[1] When considering whether a chapter 13 plan has been proposed in good faith, a bankruptcy court must consider the following factors: (1) amount of the debtor's income from all sources; (2) living expenses of debtor and his dependents; (3) amount of attorney fees; (4) probable or expected duration of debtor's chapter 13 plan; (5) motivations of debtor and his sincerity in seeking relief under the provisions of chapter 13; (6) debtor's degree of effort; (7) debtor's ability to earn and likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) frequency with which debtor has sought relief under Bankruptcy Reform Act and its predecessors; (10) circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors; and (11) burden which plan's administration would place on trustee. In addition, the court may consider the type of the debts to be discharged and whether such debts would be nondischargeable under Chapter 7, and accuracy of plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court. *See Kitchens*, 702 F.2d at 888-89.

title does not discharge an individual debtor from any debt—

>(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

The injury must be both "willful and malicious." "Willful" means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3, 118 S. Ct. 974, 977 (1998). "Willful" modifies "injury." To be nondischargeable, the debtor must intend to injure the defendant or his property.[2] *Id.* at 61. Willful does not encompass a recklessly or negligently inflicted injury. *Id.* at 64.

In this case, Burnette deliberately and intentionally sold Ms. Reynolds' vehicle. Therefore, his action was willful within the meaning of § 523(a)(6).

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

In this case, Burnette's act of selling Ms. Reynolds' automobile was wrongful because Burnette failed to comply with applicable Alabama law regarding abandoned vehicles. *Alabama Code* § 32-13-3 (1975) controls. That section authorizes a wrecker service having lawful possession of an abandoned vehicle to sell the vehicle at auction. Prior to any sale, however, the section requires the wrecker service to provide notice of the sale to the record owner of the vehicle not only by certified mail (§ 32-13-3(a)(2)) but, also, by publication (§ 32-13-3(b)). Even if Burnette gave the required certified mail notice to Ms. Reynolds as he claims, he did not publish the sale in a general circulation newspaper as required by the statute.[3] It follows that the

---

[2] It is not sufficient that the debtor intentionally committed an act which resulted in injury if the injury itself was neither intended nor substantially certain to result from the act. *Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995).

[3] Under the statute, posting the notice of sale in the county courthouse serves as a substitute for notice by publication only if there is no general circulation newspaper within the county. *See* § 32-13-3(b). In Montgomery County, Alabama, where this sale occurred, there are newspapers of general circulation.

sale was wrongful within the meaning of § 523(a)(6).

## Conclusion

Having found that Ms. Reynolds' claim against Burnette would be a nondischargeable one if this case were one under chapter 7, the court concludes that Burnette's plan fails to meet the good faith requirements of 11 U.S.C. § 1325.

By separate order, Ms. Reynolds' objection to confirmation will be sustained and the case dismissed unless the plan is amended within a prescribed time to provide for the payment of the reasonable value of the vehicle.[4]

Done this the 26th day of September, 2008.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
   Vonda S. McLeod, Debtor's Attorney
   Rosie Reynolds, Creditor
   Curtis C. Reding, Trustee

---

[4] The court notes that Ms. Reynolds attaches sentimental value to this particular car having inherited it from her deceased brother. She cannot, however, expect to be compensated here beyond the fair market value of the car and should keep in mind that it is a 1995 Chevrolet with a blown engine.